UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY MILLER o/b/o M.S.M., | CASE NO. 1:18-CV-811-GJL |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Kimberly Miller ("Plaintiff"), acting on behalf of her son, M.S.M., a minor child ("Claimant"), seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying Claimant's Supplemental Security Income ("SSI") claim. ECF Dkt. #1. In her merits brief, filed on August 14, 2018, Plaintiff asserts that the Administrative Law Judge ("ALJ") lacked substantial evidence to support his decision that Claimant was not disabled because his reasons for rejecting the opinions of a medical expert ("ME") are not supported by the record. ECF Dkt. #16. On October 29, 2018, Defendant filed a brief on the merits. ECF Dkt. #19. Plaintiff filed a reply brief on November 9, 2018. ECF Dkt. #20.

For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

## I.  PROCEDURAL HISTORY

On March 23, 2015, Plaintiff, acting on behalf of Claimant, filed an application for child's SSI, alleging disability beginning November 17, 2008 due to attention deficit hyperactivity disorder ("ADHD"). ECF Dkt. #12 ("Tr.")[2] at 92, 102, 163. The application was denied initially and upon

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed

reconsideration. *Id*. at 84-90, 93-101. Plaintiff subsequently filed a request for a hearing by an ALJ. *Id*. at 113.

On December 23, 2016, an ALJ conducted an administrative hearing, where Plaintiff and Claimant appeared and were represented by counsel. Tr. at 37. At the hearing, the ALJ received testimony from Claimant and Plaintiff, as well as from medical expert ("ME") Abby J. Greenberg. *Id*. at 37-38. On April 19, 2017, the ALJ issued decision denying Plaintiff's claim. *Id.* at 8-30. On February 6, 2018, the Appeals Council denied Plaintiff's request for review. *Id*. at 1.

On April 10, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On July 24, 2018, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #14. On August 14, 2018, Plaintiff filed a brief on the merits. ECF Dkt. #16. On October 29, 2018, Defendant filed a brief on the merits. ECF Dkt. #19. On November 9, 2018, Plaintiff filed a reply brief. ECF Dkt. #20.

## II. <u>**STEPS TO DETERMINE WHETHER CHILD IS ENTITLED TO SSI**</u>

In order to qualify for childhood SSI benefits, Claimant must show that he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.906. An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood SSI. 20 C.F.R. § 416.924(a). The three-step procedure requires the ALJ to determine whether a child:

> (1) is performing substantial gainful activity;
>
> (2) has a "severe" impairment or combination of impairments; and
>
> (3) whether the impairment or combination of impairments are of listing-level severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing").

20 C.F.R. § 416.924(a)-(d). In order to *meet* a Listing, the child's impairment(s) must be

---

the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

substantiated by medical findings shown or described in the Listing for that particular impairment. 20 C.F.R. § 416.925(d)(emphasis added). In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the Listing for that particular impairment. 20 C.F.R. § 416.926(a) (emphasis added). In order to *functionally equal* a Listing, the child's impairment(s) must be of Listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a)(emphasis added). The Commissioner assesses all relevant factors, including:

> (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings;
>
> (2) how the child functions in school; and
>
> (3) how the child is affected by his medications or other treatment.

20 C.F.R. § 416.926a(a)(1)- (3). Further, in considering whether a child's impairment functionally equals the Listings, the Commissioner begins by evaluating how a child functions on a daily basis and in all settings as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). The Commissioner considers how a child's functioning is affected during his activities at home, school and in his community in terms of six domains:

> (i) "acquiring and using information";
>
> (ii) "attending and completing tasks";
>
> (iii) Interacting and relating with others;
>
> (iv) "moving about and manipulating objects";
>
> (v) "caring for yourself"; and,
>
> (vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). If the child's impairment meets, medically equals, or functionally equals the Listing, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. 20 C.F.R. § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. 20 C.F.R. § 416.924(d)(2).

### III. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

### IV. RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ indicated that Claimant was an adolescent on March 23, 2015, the date the application was filed, and through the date of the decision. Tr. at 14. The ALJ found that Claimant had not engaged in substantial gainful activity since the application date. *Id.* He found that Plaintiff had the severe impairment of ADHD. *Id.* He further found that Claimant did not have a severe impairment that met or medically equaled the severity of one any of those in the Listings. *Id.*

The ALJ also found that Claimant did not have an impairment or combination of impairments that functionally equals the severity of the Listings and considered each of the six domains. Tr. at 15-29. The ALJ concluded that Claimant was not disabled since March 23, 2015, the date the application was filed. *Id.* at 29.

### V. ANALYSIS

Plaintiff raises one issue on appeal, arguing that the ALJ incorrectly discounted the opinion of ME Abby Greenberg and his reasons for doing so are not supported by the record. ECF Dkt. #16.

Specifically, Plaintiff contends that the ALJ was incorrect in stating that the evidence within Exhibits 12E and 13E, which the ME relied upon, were outdated. *Id.* at 21. Plaintiff also argues that the ALJ was incorrect in stating that the ME cited only to Exhibits 12E, 13E, and 18E to support her opinion. *Id.* at 22. Finally, Plaintiff argues that the record does not support the ALJ's findings that Claimant's incidents of inappropriate behavior were "isolated" events that lasted for less than 6 months. *Id.* at 22-23.

The ALJ discussed the ME's opinion and decided not to accept her opinion because it was not supported by the record. In relevant part, the ALJ stated the following regarding the ME's opinion:

> At the hearing, Dr. Greenberg expressed the opinion that the severity of the claimant's impairment meets Listing 112.11 through March 8, 2016. She explained that the evidence shows marked impulsivity, marked inattention, focusing problems, and marked hyperactivity. She opined that the evidence shows "marked" limitation in the following areas: interacting with others; concentrate, persist, or maintain pace; and adapting or managing oneself. For support, she specifically cited to Exhibits 12E, 13E, and 18E. I do not accept Dr. Greenberg's opinion or explanation because Exhibit 12E contains outdated information from 2010 and Exhibit 13E contains outdated information from 2011. Regarding Exhibit 18E, Dr. Greenberg stated that it showed the claimant is attention seeking, easily distracted, and has inappropriate behaviors. Actually, that information is contained at Exhibit 4E at page 14 (Evaluation Team Report dated October 29, 2014). This report also shows that the Team determined that the claimant continued to be eligible for special education and related services in the category of Other Health Impaired (Minor) based on his attention deficit hyperactivity disorder. The claimant continued to demonstrate limited alertness in the school setting, including distractibility, impulsivity, and focusing issues, which were greatly complicated by avoidance tactics. His social and compliance behaviors continued to be an issue, but he did not show the severity to the extent that another disability category was considered at that time. However, his attentional difficulties were negatively impacting his educational functioning at that time (4E/20). I find that Dr. Greenberg's opinion is not supported by the record.

Tr. at 14-15, 17.

Opinions from medical expert sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "*[u]nless a treating source's opinion is given controlling weight*, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §

5

416.927(e)(2)(ii) (as amended Aug. 24, 2012) (emphasis added)[3]. Also, *unless a treating source's opinion is given controlling weight*, the ALJ must consider certain factors, including weighing the supportability and consistency of the opinions, and the specialization of the physician, when deciding the weight to give that opinion. *See* 20 C.F.R. § 416.927(c) & (e)(2)(iii). Therefore, when a treating source's opinion is given controlling weight, the ALJ need not fulfill these requirements, and, instead, the ALJ is only required to generally consider and evaluate the non-treating medical opinion. *See* 20 C.F.R. § 416.927(b) & (c). In the instant case, the ALJ gave considerable weight to Claimant's treating psychiatrist, Dr. Michael Magiera, M.D. Tr. at 18. Thus, the ALJ was only required to consider and evaluate the ME's opinion.

The regulations include the so-called "good reasons" rule, which requires an ALJ to provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *5; *see also Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted). However, the "good reasons" rule only applies to the opinions of *treating physicians* when an ALJ gives less than controlling weight to such an opinion. 20 C.F.R. § 416.927(c)(2) (emphasis added). Plaintiff, in her merits brief, acknowledged that the "good reasons" rule does not apply to the opinions of nontreating sources. ECF Dkt. #16 at 20 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). The "good reasons" rule also does not apply because the ALJ gave the opinion of Claimant's treating psychiatrist considerable weight. Tr. at 18.

Therefore, an ALJ need not provide "good reasons" for the weight given to a non-treating source, such as a medical expert, although it is good practice to provide some analysis for the weight given. Here, the ALJ stated that he did not accept Dr. Greenberg's opinion and discussed his reasoning, even though he was not required to do so. Nevertheless, the undersigned will address

---

[3]20 C.F.R. § 416.927 is also codified in 20 C.F.R. § 404.1527.

each of Plaintiff's specific contentions regarding the reasons provided by the ALJ for discounting the ME's opinion.

A SSI claimant must establish disability while his application is pending, and the earliest he is entitled to receive benefits is the month following the month the claimant filed his application. 20 C.F.R. §§ 416.330, 416.335; *see Koster v. Comm'r of Soc. Sec.*, 643 Fed.Appx. 466, 478 (6th Cir. 2016) (stating that SSI is not retroactive); *Hintz v. Comm'r of Soc. Sec.*, No. 5:17CV1280, 2018 WL 4442316, at *7 (N.D. Ohio July 12, 2018) report and recommendation adopted, No. 5:17 CV 1280, 2018 WL 4042351 (N.D. Ohio Aug. 24, 2018) ("To be eligible for [SSI] benefits, it is Plaintiff's burden to establish she was disabled while the application was pending and provide a record to establish her claims."). Generally, for cases involving only a claim for SSI, "the SSI application date may be used as the onset date for an SSI claim." *Nicely v. Comm'r of Soc. Sec.*, No. 3:12CV593, 2013 WL 1182223, at *5 (N.D. Ohio Mar. 21, 2013); *see* Titles II & XVI: Onset of Disability, SSR 83-20, 1983 WL 31249 ("[E]xcept for certain cases of aliens where an exact onset date of disability must be determined for eligibility purposes, the only instances when the specific date of onset must be separately determined for a title XVI case is when the onset is subsequent to the date of filing or when it is necessary to determine whether the duration requirement is met.").

An ALJ must "consider" all evidence in a claimant's case record when making a determination or decision whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(3). An ALJ is also required to "develop [a claimant's] complete medical history for at least the 12 months preceding the month in which [the claimant] file[s] [his] application unless there is a reason to believe that development of an earlier period is necessary." 20 C.F.R. § 416.912(d) (as amended June 12, 2014). The regulations defined "complete medical history" as "the record of [] medical source(s) covering at least the 12 months preceding the month in which [a claimant] files [his] application." § 416.912(d)(2). The Sixth Circuit also recognized that medical evidence pre-dating a claimant's alleged onset date is not necessarily irrelevant and such evidence, "when evaluated *in combination with later evidence*, may help establish disability," particularly "when the disabling condition is progressive." *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411, 414 (6th Cir. 2006) (original emphasis).

7

In his decision, the ALJ acknowledged the SSA regulations and stated the following:

> Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR. 416.335), I have considered the complete medical history consistent with 20 CFR 416.912(d).

Tr. at 11.

Subsequently, when discussing why he discounted the ME's opinion, the ALJ reasoned that two of the exhibits the ME relied upon, education records in Exhibits 12E and 13E, contained outdated information from 2010 and 2011. Tr. at 14, 17. Importantly, Plaintiff filed for SSI on March 23, 2015, alleging a disability onset date of November 17, 2008. Tr. at 92, 102, 163. Therefore, because the claim is for SSI, the ALJ was correct in using March 23, 2015, the date of the application, as the onset date. The ALJ was required to "develop" the claimant's complete medical history for at least 12 months preceding this date, as required by the regulations, but this is not at issue for two reasons. 20 C.F.R. § 416.912(d). First, § 416.912(d) expressly refers to "medical reports from medical sources" and does not plainly include education records. *Id.* Second, the record already contains medical records from at least 12 months before the application date, with some even dating back to 2011. 20 C.F.R. § 416.912(d); Tr. at 1417-26. The ALJ must still "consider" all of the medical opinions and relevant evidence. 20 C.F.R. § 416.927(b). "Evidence" is defined to include information from "other sources," which is further defined in § 416.913 as including educational personnel. 20 C.F.R. §§ 416.912(b)(4) (as amended June 12, 2014) & 416.913 (as amended Sept. 3, 2013). However, this does not require that an ALJ find education records dating back 4 to 5 years prior to the onset date to be persuasive. There is no indication that the ALJ did not consider these earlier records. Rather, the ALJ used the ME's reliance on these records as one reason to discount her opinion.

Furthermore, during the hearing before the ALJ, the ME testified that ADHD imposed limitations on Claimant and specifically based her findings on Exhibits 4E, 5E, 12E, 13E, 14E, 16E, 17E, 24E, 25E, 26E, 30E, 2F, 3F, 4F, 5F, 6F, 11F, and 13F. Tr. at 76-77. During her testimony, the ME also made specific references to Exhibits 12E, 13E, 18E, 2F, 6F, 23E, and 30E. *See id.* at 77-80. Petitioner stated that "the ALJ's statement that the ME cited only to Exhibits 12E, 13E, and 18E to support her opinion is also incorrect." ECF Dkt. #16 at 22. Plaintiff further stated that this was a

8

"mischaracterization by the ALJ." ECF Dkt. #20 at 1-2. Defendant asserted that the ALJ's statement was technically accurate because Dr. Greenberg did specifically reference the information from those exhibits. ECF Dkt. #19 at 15. As previously established, the ALJ is not required to give good reasons for discounting an ME's opinion. Although the ALJ failed to state that the ME referenced several other exhibits during her testimony, the ALJ appeared to specifically focus on Exhibits 12E, 13E, and 18E in order to support his conclusion to discount the ME's opinion. *See* Tr. at 14, 17.

Plaintiff's final contention is with regard to the ME's testimony about the six functional domains. In relevant part, the ALJ stated the following:

> Regarding the six functional domains, Dr. Greenberg expressed the following opinion: (1) less than marked limitation in acquiring and using information at all times; (2) marked limitation in attending and completing tasks at all times; (3) marked limitation in interacting and relating with others through March 8, 2016, and then less than marked; (4) no limitation in moving about and manipulation of objects at all times; (5) marked limitation of caring for self through March 8, 2016, but then less than marked; and (6) less than marked limitation health and physical well-being at all times. For support of the marked limitation at #2, Dr. Greenberg specifically cited to Exhibit 23E containing the discipline records involving inappropriate behavior and expulsion probation. However, I find these incidents were rather isolated and limited to a less than six-month timeframe and I find the claimant's symptoms and limitation are not as severe as alleged. For support of the marked limitation at #5, Dr. Greenberg again cited to Exhibit 23E referring to the expulsion probation. The claimant was put on "probation," but allowed to stay in school. Furthermore, the record is devoid of any further violations of the student conduct code or disciplinary action. From this, I find these incidents were rather isolated and limited to a less than six-month timeframe and I find the claimant's symptoms and limitations are not as severe as alleged. I do not accept Dr. Greenberg's opinions because they are not supported by the record.

Tr. at 17.

The ALJ also discussed the Claimant's disciplinary records with the onset date of March 23, 2015 in mind. *See* Tr. at 16. Specifically, the ALJ analyzed several incidents of inappropriate and disruptive behavior at school from September 16, 2015 until March 11, 2016, when the school held an expulsion hearing, which led to Claimant being placed on "probation." *Id.* The ALJ noted that after the expulsion hearing, "the record is devoid of any further violations of the student conduct code or disciplinary action." *Id.* However, Plaintiff correctly points out that there are more instances where claimant engaged in disruptive behavior and refused to follow reasonable requests. *See id.* at 632. School records show Claimant was disciplined on September 12, October 6, October 16, October 27, November 5, and November 7 of 2014, and February 9, March 20, May 4, September

9

16, October 27, and October 30 of 2015, as well as March 7, 2016. *Id.* at 507-09, 559, 632.

The ALJ did not properly "consider" the instances of behavioral problems prior to the application date, March 23, 2015. The ALJ expressly discussed only the records dating from September 16, 2015 until March 11, 2016 and concluded that the incidents were "isolated and limited to a less than six-month timeframe" and found that Claimant's symptoms were not as severe as alleged. Tr. at 16-17. Consideration of all of the education records from September 12, 2014 until March 11, 2016 reveals that the period of Claimant's disruptive behavior lasted longer than 6 months and was rather consistent throughout certain school semesters.

However, the Court finds this error to be harmless. "An agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 541 546–47 (6th Cir. 2004) (emphasis added) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir.1983)). In the instant case, the ALJ gave great weight to the opinions of the State agency psychological consultants, great weight to Claimant's intervention specialist, less weight to four teachers who provided little or no explanation for their opinions, and considerable weight to the opinion of Claimant's treating psychiatrist. Tr. at 16-18. Both of the State agency consultants opined that Claimant's impairment did not meet, medically equal, or functionally equal the Listings. *Id.* at 17, 84-88, 93-98. The intervention specialist reported that Claimant was able to make the right choices and get work done, unless he had not had his medication and that he was "more focused" after taking medication. *Id.* at 18, 252, 255. Claimant's treating psychiatrist, Dr. Magiera, opined that Claimant had no limitation in 4 of the domains and moderate limitation in the remaining 2 domains. *Id.* at 18, 1488-91. Plaintiff has failed to show how Claimant suffered prejudice from the ALJ's error in not considering the Claimant's disciplinary records from before the application date, especially in light of the fact that the ALJ based his findings mainly on several other medical and other opinions that are generally consistent with each other and support a finding of not disabled.

Since the ALJ's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also

supports the opposite conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

IT IS SO ORDERED.


DATE: August 20, 2019                     */s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE